IN RE APPLICATION OF IRVING TAIL FOR WRIT OF HABEAS CORPUS.

IRVING TAIL, RELATOR, APPELLANT, V. NEIL OLSON, WARDEN OF THE STATE PENITENTIARY AT LINCOLN, NEBRASKA, RESPONDENT, APPELLEE.

16 N. W. 2d 161

FILED OCTOBER 20, 1944   No. 31795.

*Lee Card,* for appellant.

*Walter R. Johnson, Attorney General, H. Emerson Kokjer* and *Rush C. Clarke, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and WENKE, JJ.

WENKE, J.

This habeas corpus proceeding was instituted in the district court for Lancaster county by the relator, Irving Tail, against Neil Olson, Warden of the Nebraska penitentiary, as respondent, to obtain the relator's release. From an order denying the writ, the relator has appealed to this court.

The relator's application discloses that a complaint for second degree murder was filed against him in the county court of Sheridan county on August 5, 1939, and on the same day, after entering a plea of guilty, he was bound over to the district court for Sheridan county. Information was then filed in the district court on August 18, 1939, and on August 21, 1939, after relator had entered his plea of guilty, he was sentenced to the Nebraska state penitentiary for the period of his natural life and is confined and being held in said institution pursuant thereto.

It is not entirely clear from the relator's brief whether he claims the state court was without jurisdiction because he was an Indian ward and therefore under the exclusive jurisdiction of the federal government. However, chapter 15, title 18 U. S. C. A., sec. 548 of the federal penal code, vests such jurisdiction in the state courts. See *In re Application of Rice, Rice v. Olson*, 144 Neb. 547, 14 N. W. 2d 850.

Relator contends that the failure of the court to appoint counsel for him is contrary to the provisions of both the state and federal Constitutions and the federal statutes; that such failure was jurisdictional and because thereof the court was without jurisdiction to impose sentence. The record does not disclose that application was ever made for the appointment of counsel. We have held in *In re Application of Rice, Rice v. Olson, supra; Alexander v. O'Grady*, 137 Neb. 645, 290 N. W. 718; *Davis v. O'Grady*, 137 Neb. 708, 291 N. W. 82: "The constitutional right of accused to have the assistance of counsel may be waived, and a waiver will be implied where accused, being without counsel, fails to demand that counsel be assigned him."

Relator's application sets forth that at the time the in-

formation was filed he was an Oglala Sioux, 16 years of age, residing with his parents on a farm on the Pine Ridge Sioux Indian Reservation in South Dakota and a ward of the United States government; that he had about a fifth grade education; that he was unfamiliar with and inexperienced in court procedure and ignorant of his legal rights; and that he was without means to employ counsel. He has presumably set forth his age, education, nationality, inexperience with court procedure and lack of knowledge of his legal rights, as a basis for questioning the fact that he was capable of waiving his right to counsel. However, the journal of the county judge on preliminary hearing binding the relator over to the district court recites: " * * * and the Defendant appearing in open Court in person, and by Frank F. Aplan, his Attorney." The journal of the judgment of the district court for Sheridan county sentencing the relator to life imprisonment in the state penitentiary after his plea of guilty recites: " * * * and the defendant appearing in open Court in person with his attorney, Frank F. Aplan; * * * ." Frank F. Aplan was at the time admitted to practice of law in Nebraska and in good standing as an active practitioner. Having been represented by counsel, all the statutory and constitutional provisions giving him the right thereto have been met and the question of his waiver thereof is not before the court. In the absence of any statement of facts to the contrary it will be presumed that the relator had the benefit of his counsel.

The relator seriously contends he is innocent, but this is not before the court in this proceeding. "Habeas corpus is a collateral, not a direct, proceeding when regarded as a means of attack upon a judgment sentencing a defendant. It cannot be used as a substitute for a writ of error." *In re Application of Maher, North v. Dorrance*, 144 Neb. 484, 13 N. W. 2d 653. "A judgment or sentence of a court of record in a criminal case is thus supported by the usual presumptions of validity and regularity when thus attacked. To obtain release from a sentence of imprisonment by habeas corpus, such sentence must be absolutely void." *State*

*ex rel. Gossett v. O'Grady,* 137 Neb. 824, 291 N. W. 497. "The right of a person to the writ of habeas corpus depends on the legality or illegality of his detention, and this in turn depends on whether the fundamental requirements of law have been complied with, and not at all on the guilt or innocence of the prisoner, * * * ." 39 C. J. S., sec. 13, p. 441, and cases cited under note 69. "The guilt or innocence of one accused of crime, or convicted of a crime, is not justiciable in habeas corpus." *Smith v. Amrine,* 156 Kan. 486, 134 Pac. 2d 400.

Many of the relator's grounds for release are pleaded in the form of conclusions such as that he was denied and prevented from having counsel through threats, intimidation and coercion, or that he was required to and did plead guilty because of threats, intimidation and coercion. Under our statute, section 29-2801, Comp. St. 1929, and the decisions of this court the relator must set forth the facts from which it is made to appear he will be entitled to discharge. As stated in *State ex rel. Distin v. Ensign,* 13 Neb. 250, 13 N. W. 216: "The petition must set forth the facts constituting the illegal detention. It is not sufficient to state that the petitioner is illegally restrained of his liberty, as that is a conclusion, but it must be made to appear in what the illegal restraint consists." And in *In re Application of Tail, Tail v. Olson,* 144 Neb. 820, 14 N. W. 2d 840: "It is generally held that the trial court may refuse to allow a writ of habeas corpus where the facts alleged in the application would not warrant discharge of the prisoner, and the grant or refusal of the writ is a judicial act. 1 Bailey, Habeas Corpus, 13, sec. 5; *Goetz v. Black,* 256 Mich. 564, 240 N. W. 94, 84 A. L. R. 802. Habeas corpus is a writ of right, but not a writ of course, and probable cause must first be shown which rightly prevents the writ from being trifled with by those who manifestly have no right to be at liberty. 25 Am. Jur. 153, sec. 16. Judicial discretion is exercised in its allowance, and such facts must be made to appear in the application to the court as in its judgment will, *prima facie,* entitle the applicant to be discharged

from custody. 39 C. J. S. 436, sec. 6; 25 Am. Jur. 238, sec. 131; 29 C. J. 14." As stated in *Mellor v. Hinkley*, 201 App. Div. 619, 194 N. Y. S. 732, 39 N. Y. Cr. 534: "It is, therefore, incumbent upon the petitioner to set forth the particulars in which this imprisonment was illegal." See, also, *State v. Flynn*, 180 Wis. 556, 193 N. W. 651. And as stated in *State ex rel. Sherin v. Goss*, 73 Minn. 126, 75 N. W. 1132: "The petition should be construed somewhat liberally, in favor of the liberty of the citizen, but it should place before the court or judge facts enough to permit an intelligent judgment to be formed of the case. The petition should show in what the illegality consists, and this should be done by stating facts, as contradistinguished from mere conclusions of law."

In an application for a writ of habeas corpus if the applicant or petitioner sets forth facts which, if true, would make out a case which would entitle him to his discharge, then the writ is a matter of right and the petitioner should be produced and a hearing held thereon to determine the question of fact presented. But, if he shows by the facts which he sets forth in his application for the writ that he is not entitled to relief, then the writ will be denied for it would be useless to go through the procedure of granting the writ and having the party brought before the court merely to be remanded back to the custody out of which he seeks to be discharged. Since the allegations of the petition are often inconclusive and mere statements of conclusions of the pleader the court may refuse to issue the writ if, upon the face of the petition, it appears that the party is not entitled thereto.

Omitting the relator's statements of conclusions and as to his innocence, the application recites that on August 1, 1939, while at the home of his father, Daniel Tail, at Porcupine post office on the Pine Ridge Sioux Indian Reservation of the United States located in South Dakota, he was told by various persons of the commission of a crime at the city of Gordon, Nebraska, and that he was guilty thereof. During the forenoon of said day, Frank Twiss, an Indian

policeman, came to his home and put handcuffs on him and then directed him, his father and another Indian, Levi Black Bear, to get into their automobile. They were then taken to Rushville, Nebraska, and there lodged in jail. He was then informed of the death of Nellie Yellow Thunder, another Oglala Sioux, accused of her death and advised that he could plead guilty thereto. It was then stated to him, without stating by whom but apparently by his father, Levi Black Bear and their associates, that if he would plead guilty to the crime of murder in the second degree any others implicated therein would go free; that the court or judge would only give him a sentence of three years, or shorter, because he was a child; that if he did not plead guilty he would probably be hanged or death be inflicted upon him in some way. He further alleges this attitude by affiant's associates and the officers of the law, without naming them but as he understood them to be, caused him to follow their suggestions and plead guilty.

From a consideration of all the facts set forth by the relator, we think the lower court was right in denying the writ.

AFFIRMED.

CHAPPELL, J., participating on briefs.