RICE v. OLSON, WARDEN.

No. 391. Argued February 1, 1945.—Decided April 23, 1945.

*Mr. Barton H. Kuhns* for petitioner.

*Robert A. Nelson,* Assistant Attorney General of Nebraska, with whom *Walter R. Johnson,* Attorney General, and *H. Emerson Kokjer,* Deputy Attorney General, were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner, an Indian, without benefit of counsel pleaded guilty to a charge of burglary in the District Court of Thurston County, Nebraska, and was sentenced to from

one to seven years. He petitioned another state District Court for a writ of habeas corpus seeking release from the penitentiary on the grounds, among others,[1] that he had been deprived of his constitutional right of counsel, and that the state court lacked jurisdiction. He alleged that he was ignorant of the law, and that in preparing his petition he had no one to help him except a fellow inmate. Petitioner did not challenge the facts stated in the judgment entry, i. e., that, in the burglary proceedings, he was arraigned and pleaded guilty, that the burglary statute was read to him, and that he then reiterated his plea. He challenged the validity of the judgment, however, on the ground that, in violation of the Fourteenth Amendment, he had been deprived of due process of law in that the trial court failed to advise him of his constitutional rights to counsel and to call witnesses. Petitioner further alleged that he had not waived those rights by word or action. Finally, the petition alleged that the conviction was void because the alleged crime was committed on an Indian Reservation which was exclusively within federal jurisdiction.

The petition was dismissed by the state District Court, for lack of merit, without an answer, and without a hearing. Petitioner then moved to set aside the dismissal, repeating his allegations, and requesting the appointment of counsel to assist him. The motion was denied, and petitioner, again acting in his own behalf, appealed to the Supreme Court of Nebraska. That court, without requiring an answer, affirmed the District Court. 144 Neb. 547, 14 N. W. 2d 850. Because important constitutional

---

[1] Allegations of the petition charging that the petitioner's imprisonment was illegal under state laws need not be set out, since those questions have been finally adjudicated by the state Supreme Court and are not subject to review here. *Smith* v. *O'Grady*, 312 U. S. 329, 330.

rights are involved, we granted certiorari and appointed counsel to represent petitioner. 323 U. S. 696.

In affirming, the Nebraska Supreme Court stated that " 'It is not necessary that there be a formal waiver; and a waiver will ordinarily be implied where accused appears without counsel and fails to request that counsel be assigned to him, particularly where accused voluntarily pleads guilty.' " It is apparent that the court's affirmance did not rest on its statement that a plea of guilty "ordinarily implied" a waiver of the right to counsel, but upon a holding that such a plea "absolutely" and finally waives that right.[2] This is inconsistent with our interpretation of the scope of the Fourteenth Amendment.

Whatever inference of waiver could be drawn from the petitioner's plea of guilty is adequately answered by the uncontroverted statement in his petition that he did not waive the right either by word or action. This denial of waiver squarely raised a question of fact. The state Supreme Court resolved this disputed fact by drawing a conclusive implication from the petitioner's plea of guilty. This is the equivalent of a holding that one who voluntarily pleads guilty without the benefit of counsel has thereby competently waived his constitutional right to counsel, even though he may have sorely needed and been unable to obtain legal aid. A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary. It is enough that a defendant

---

[2] In discussing allegations of the petition other than the one relating to appointment of counsel, the state Supreme Court also quoted with approval a statement that "A plea of guilty admits all facts sufficiently pleaded, . . . operates as a waiver of any defense, and . . . with it, of course, the constitutional guarantees with respect to the conduct of criminal prosecutions." The court therefore said that since the record affirmatively showed "that the defendant had pleaded guilty, this absolutely waived this and all other preliminary steps in connection therewith . . . "

charged with an offense of this character is incapable adequately of making his defense, that he is unable to get counsel, and that he does not intelligently and understandingly waive counsel.[3]  Whether all these conditions exist is a matter which must be determined by evidence where the facts are in dispute.

The petitioner's need for legal counsel in this case is strikingly emphasized by the allegation in his habeas corpus petition that the offense for which the state court convicted him was committed on a government Indian Reservation "without and beyond the jurisdiction of the Court."  This raises an involved.question of federal jurisdiction, posing a problem that is obviously beyond the capacity of even an intelligent and educated layman, and which clearly demands the counsel of experience and skill.

The policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history. See *Worcester* v. *Georgia,* 6 Pet. 515; 1 Stat. 469; 4 Stat. 729.  In the light of this historical background Congress in 1885 passed a comprehensive Act, 23 Stat. 362, 385, in order to fulfill "treaty stipulations with various Indian Tribes," specifically including the Winnebagoes, of which tribe the petitioner alleges he is a member.  The last section of that Act subjects Indians who commit certain crimes, including burglary, to trial and punishment.  The language there used to accomplish this purpose is that "all such Indians committing any of the above crimes against the person or property of another Indian or other person within the boundaries of any State of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and subject to the same penalties

---

[3] *Williams* v. *Kaiser,* 323 U. S. 471; *Tomkins* v. *Missouri,* 323 U. S. 485; *House* v. *Mayo,* 324 U. S. 42.

as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States." 23 Stat. 385. This section now appears as § 548 in Title 18 of the United States Code, and the state Supreme Court has ruled that it gives Nebraska authority to try the petitioner. This construction of the section is not in accord with that heretofore given it by the Courts of Nebraska and other courts.[4] In argument before us, Nebraska does not rely on the state Supreme Court's construction of 18 U. S. C. 548. Instead it argues that petitioner's allegation that the crime was committed on an Indian Reservation is false, and that the state Supreme Court was required to take judicial knowledge of its falsity. It admits, however, that Thurston County, where the burglary was allegedly committed, is included within the original statutory boundaries of a federally created Indian Reservation, 14 Stat. 667, 14 Stat. 671, and that the village of Winnebago, where the alleged offense was committed, is located within the boundaries of the Winnebago Reservation. The village of Winnebago, it insists, has ceased to be a part of the Reservation because all the Indians have been given the full benefits of citizenship by Nebraska and because Winnebago is incorporated under the laws of Nebraska and is located entirely upon land which has been patented in fee. The facts upon which this contention rests are said to be those of which Nebraska courts can take judicial knowledge. With these facts thus established, it is said that jurisdiction of Nebraska over this offense is conferred by § 6 of the General Allotment Act passed in 1887, 24 Stat. 390, as amended, 34 Stat. 182. Assuming that all the facts urged by the State are correct, and that these Indian

---

[4] *Ex parte Cross*, 20 Neb. 417, 30 N. W. 428, cf. *Kitto* v. *State*, 98 Neb. 164, 152 N. W. 380; *State* v. *Campbell*, 53 Minn. 354, 55 N. W. 553; *People* v. *Daly*, 212 N. Y. 183, 105 N. E. 1048; *United States* v. *Kagama*, 118 U. S. 375.

lands have been disposed of under this latter statute, the State finds support for its contention in this Court's interpretation of that Act in *Matter of Heff*, 197 U. S. 488. But later cases have cast considerable doubt on what was said in the *Heff* decision. *United States* v. *Celestine*, 215 U. S. 278, 290–291; *Hallowell* v. *United States*, 221 U. S. 317, 323; *Tiger* v. *Western Investment Co.*, 221 U. S. 286, 314; *Donnelly* v. *United States*, 228 U. S. 243, 269–272; *United States* v. *Chavez*, 290 U. S. 357; *United States* v. *McGowan*, 302 U. S. 535, 539.

All of these questions concerning the power of the state courts to try this Indian petitioner for burglary indicate the complexities of the problem he would have found had he attempted to defend himself on this ground. And a decision by the state court that it had jurisdiction might or might not have finally determined the issue. Cf. *Toy Toy* v. *Hopkins*, 212 U. S. 542, 549, and *Bowen* v. *Johnston*, 306 U. S. 19.

. We conclude that the petitioner is entitled to a hearing on his allegations that he did not, in the burglary proceedings, waive his constitutional right to have the benefit of counsel.

It has been suggested that even if the court below erred in holding that a plea of guilty is a conclusive waiver of the right to counsel, its judgment might be sustained on the ground that habeas corpus was not the proper remedy, or because the allegations of the petition lack sufficient definiteness. The very fact that the court considered the petition on its merits gives rise to a strong, if not conclusive, inference that the petition satisfied the state's procedural requirements in all respects. By treating this clumsily drawn petition with liberality, instead of dismissing it because of a failure to comply with the precise niceties of technical procedure, the state Supreme Court acted in accordance with its traditional solicitude for the

writ.[5] And this treatment is in line with federal practice. "A petition for *habeas corpus* ought not to be scrutinized with technical nicety. Even if it is insufficient in substance it may be amended in the interest of justice." *Holiday* v. *Johnston,* 313 U. S. 342, 350, 351.[6]

Since the state court placed its judgment precisely on the absence of merit in the petition, we could not, except by speculation, conclude that the petition failed to measure up to its procedural requirements.[7] For the reasons given, we hold that the allegations of the petition showed a prima facie violation of the petitioner's right to counsel.

*Reversed.*

MR. JUSTICE FRANKFURTER, dissenting.

In view of the circumstances revealed by the record in this case and in the light of Nebraska's experience with

---

[5] "It must be conceded that the petition is not a skillfully drawn pleading, but as it was not attacked in the district court it must receive a liberal construction here . . . Crocker made no appearance in the case, and the warrant was not set out in any of the pleadings. When attacked after judgment, the petition, though informal, must be held sufficient." *Urban* v. *Brailey,* 85 Neb. 796, 798–99, 124 N. W. 467. "It has been held that the proper method of attacking the petition is by motion to quash the writ, and that insufficiency in the petition is waived unless that remedy be resorted to. (*McGlennan* v. *Margowski,* 90 Ind. 150.)" *Nebraska Children's Home Society* v. *State,* 57 Neb. 765, 769, 78 N. W. 267. See also *Chase* v. *State,* 93 Fla. 963, 113 So. 103; *State ex rel. Chase* v. *Calvird,* 324 Mo. 429, 24 S. W. 2d 111; *Stuart* v. *State,* 36 Ariz. 28, 282 P. 276; *State ex rel. Davis* v. *Hardie,* 108 Fla. 133, 146 So. 97; *Ex parte Tipton,* 83 Cal. App. 742, 257 P. 445; *Deaver* v. *State,* 24 Ala. App. 377, 135 So. 604; *McDowell* v. *Gould,* 166 Ga. 670, 144 S. E. 206; *Ex parte Tollison,* 73 Okl. Cr. 38, 117 P. 2d 549; *People* v. *Superior Court,* 234 Ill. 186, 84 N. E. 875; *Willis* v. *Bayles,* 105 Ind. 363, 5 N. E. 8.

[6] See also *Cochran* v. *Kansas,* 316 U. S. 255; *Bowen* v. *Johnston,* 306 U. S. 19.

[7] See *Smith* v. *O'Grady, supra;* cf. *United States* v. *Ju Toy,* 198 U. S. 253, 261.

petitions for *habeas corpus,* as laid before this Court by the Attorney General of Nebraska, the meager allegations of this petition for *habeas corpus* should preclude our attributing to the Supreme Court of Nebraska a disregard, in affirming a denial of the petition, of rights under the Constitution of the United States rather than a denial on allowable state grounds. Accordingly, I believe the judgment should be affirmed.

MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON join in this view.